# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CHAZE BIAMI,<br><br>                              Petitioner,<br><br>v.<br><br>WARDEN MICHAEL MEISNER,<br><br>                              Respondent. | Case No. 22-CV-544-JPS<br><br><br>**ORDER** |

**1.     INTRODUCTION**

On May 5, 2022, Petitioner Chaze Biami ("Petitioner") filed a petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2254. ECF No. 1. This Court screened the petition under Rule 4 of the Rules Governing § 2254 cases and ordered Petitioner to file an amended petition omitting a perceived unexhausted ground for relief. ECF No. 5 at 9–11. The Court then screened Petitioner's amended petition, ECF No. 6, understanding it as raising two grounds:

> (1) [t]hat his due process rights were violated because his plea was not knowingly, intelligently, and voluntarily made, in violation of Wis. Stat. § 971.08(1)(a) or its federal equivalent; and
>
> (2) [t]hat his counsel was ineffective regarding the nature of Petitioner's plea.

ECF No. 8 at 2–3 (also setting briefing schedule).

Petitioner filed a brief in support of his amended petition. ECF No. 7. Respondent answered the amended petition in June 2023 and opposed it

in September 2023. ECF Nos. 13, 16.[1] This case is now ripe for a merits analysis. For the reasons discussed herein, the Court will deny the amended § 2254 petition and dismiss this case with prejudice.

2. **BACKGROUND**

   2.1 **The Facts Giving Rise to Petitioner's Criminal Case[2]**

   This § 2254 petition arises out of Petitioner's conviction in Milwaukee County Circuit Court Case No. 2016CF2689.[3] Petitioner pleaded no contest in that case to "three counts of injury by intoxicated use of a motor vehicle and three counts of second-degree reckless injury, each as a repeat offender" after he drunkenly drove the wrong way down a highway at a high speed and collided with an oncoming vehicle in June 2016.

   2.2 **Procedural Background**

   Petitioner's plea hearing before the Milwaukee County Circuit Court was held in December 2016. ECF No. 13-10. Attorney Michael Steinle ("Steinle") represented Petitioner at that proceeding.

   County prosecutor Francesco Mineo ("Mineo") began by informing the court that Petitioner intended to "enter[] a plea to Count 1, 2, and 3, injury by intoxicated use of a vehicle, great bodily harm as a repeater, as well as Count 7, 8, and 9, second-degree reckless injury as a repeater." *Id.* at 2. He then clarified that "[t]he remaining counts w[ould] be dismissed as

---

[1]The Court has also reviewed and considers, as relevant, Petitioner's filings at ECF Nos. 14, 15, and 17.

[2]The following abbreviated factual background is taken from the Court's screening order. ECF No. 5. For brevity, the Court omits citations to that order.

[3]*See State of Wisconsin v. Chaze Desouva Biami,* No. 2016CF2689 (Milwaukee Cnty. Cir. Ct. 2016), *available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2016CF002689&countyNo=40&index=0&mode=details (last visited Dec. 22, 2023).

read-in, as well as the other TR traffic matters." *Id.* The State intended to recommend "full restitution for all victims, a global sentence of 20 years of initial confinement and ten years of extended supervision [in addition to] a 24[-]month driver's license revocation, an ignition interlock device, as well as the mandatory AODA assessment." *Id.* at 2–3. The State would recommend as conditions of supervised release "AODA treatment, random urine screens, absolute sobriety, no driving without a valid driver's license, and any other conditions the Court deems appropriate." *Id.* at 3. The proceeding continued as follows:

> **The court:** Mr. Biami, you got a total of 13 counts in front of me right now. The district attorney and your lawyer are telling me you are going to plead to six of them. The others will be dismiss[ed] and read-in, which means I can consider them at sentencing.
>
> Once we go to the sentencing the district attorney is going to recommend that I sentence you to 30 years in prison, 20 years initial confinement, ten years extended supervision. You and your lawyer can argue for whatever you want. Do you understand the deal?
>
> **Petitioner:** Yes, sir.
>
> **The court:** Do you understand that the maximum on Count 1 is a fine of up to $25,000, you could be put in prison for up to 18 and a half years, divided into 13 and a half initial confinement, and five years extended supervision. Do you understand the maximums in Count 1?
>
> **Petitioner:** Yes, sir.
>
> **The court:** Those are the same maximums in Count 2 and Count 3. Do you understand that as well?
>
> **Petitioner:** Yes, sir.

> **The court**: And with regard to Count 7, the maximum penalty is a fine of up to $25,000, and you could be put in prison for up to 18 and a half years, divided into—Strike that. It's 13 and a half initial confinement and five years extended supervision. The same is true for Counts 8 and 9. Do you understand those maximums?
>
> **Petitioner**: Yes, sir.
>
> **The court**: Knowing all of that, including all of the maximums, what is your plea to the charge of injury by intoxicated use of a motor vehicle as a habitual criminal in Count 1? Guilty or not guilty?
>
> **Petitioner**: No contest, sir.
>
> **The court**: That's right. It is a no contest. The reason for the no contest, Mr. Steinle?
>
> **Steinle**: Strictly for civil reasons, Judge. I explained it to him, and it is actually my legal advice to say no contest, but it is a guilty no contest—
>
> **The court**: Yeah, I understand.
>
> . . .
>
> **The court**: Do you understand that when you plead no contest I accept what is true in the complaint and find you guilty of the six counts? Do you understand that?
>
> **Petitioner**: Yes, sir.

*Id.* at 3–6. The court then recited each count individually, confirming that Petitioner's plea to each was no contest. *Id.* at 6. The court referred Petitioner to the "plea questionnaire and waiver of rights form." *Id.* These forms included "attached jury instructions describing the elements of the crimes." ECF No. 13-4 at 5, 6. The court confirmed that Petitioner signed these forms; that Steinle explained them to Petitioner; that Petitioner's responses in the forms were true and correct; and that Petitioner

understood that by signing them, he was pleading no contest to the charges. ECF No. 13-10 at 6–7. The court next confirmed that Steinle had "explain[ed] to [Petitioner] what the State has to prove in order for [the court] to find [him] guilty" and that Petitioner understood that he was giving up certain rights, including the right to be tried by a jury and to "have the State prove that [Petitioner] did these crimes by proof beyond a reasonable doubt." *Id.* at 7–8.

The court then went on to describe the factual basis for the charges, including that Petitioner was driving while intoxicated at "almost twice the limit" and on a suspended license when he hit the victims' vehicle, severely injuring all three occupants. *Id.* at 8–9. The court then confirmed with Petitioner multiple times that he understood what the State "ha[s] to prove" with respect to the offenses to which Petitioner was pleading no contest. *Id.* at 9.

| | | |
|---|---|---|
| **The court**: | | So do you understand what they have to prove? |
| **Petitioner:** | | Yes, sir. |
| **The court:** | | And do you understand that I am going to consider all of those facts that I just outlined, including the fact that, according to the State, that you caused great bodily harm to another human being, to three other human beings, in second-degree reckless injury. Do you understand what they have to prove and do you understand I am going to consider those facts? Yes or no? |
| **Petitioner:** | | Yes, sir. |

*Id*. at 9–10. The court also conveyed that, notwithstanding the "deal between [Petitioner's] lawyer and the district attorney," the court was "free to decide what to do with [him], and that could include the maximums." *Id.*

at 10. The court confirmed that no one had "forced [Petitioner] to plead . . . no contest to these six charges," that Petitioner was "entering into th[e] plea freely, voluntarily, intelligently, [and] with full understanding," that Petitioner had not "used any alcohol or illegal drugs in the last 24 hours," that Petitioner had had enough time to go over th[e] case with [his] lawyer," that Petitioner was "satisfied that [he] ha[d] sufficiently discussed with [his] lawyer . . . the nature of the charges . . . and whether . . . there were any defenses to the[] charges," and that Petitioner was "satisfied with the way that Mr. Steinle ha[d] been representing [him]." *Id*. at 10–13. Petitioner also confirmed that he was not "confused about anything that [he] was doing" with respect to his plea and that there was nothing "about what [he] [was] doing [at the proceeding] that [he] d[id]n't understand." *Id.* at 13.

The court also confirmed separately with Steinle that Steinle "went over the elements of each offense" with Petitioner and that Steinle was satisfied that Petitioner "underst[ood] the elements and how they relate to his conduct." *Id.* at 13–14. Accordingly, the court concluded that Petitioner had entered into the plea "freely, voluntarily, intelligently, [and] with full understanding of the nature of the charges" and "accept[ed] the plea," "adjudg[ing] [Petitioner] guilty." *Id.* at 15–16.

### 3. STANDARD OF REVIEW ON HABEAS

State criminal convictions are generally considered final. Review may be had in federal court only on limited grounds. To obtain habeas relief from a state conviction, 28 U.S.C. § 2254(d)(1) (as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA")) requires the petitioner to show that the state court's decision on the merits of his constitutional claim was contrary to, or involved an unreasonable

application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Brown v. Payton*, 544 U.S. 133, 141 (2005). The burden of proof rests with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The relevant decision for this Court to review is that of the last state court to rule on the merits of the petitioner's claim. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006).

A state-court decision runs contrary to clearly established Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [those] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown*, 544 U.S. at 141 (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000) and *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam)). Similarly, a state court unreasonably applies clearly established Supreme Court precedent when it applies that precedent to the facts in an objectively unreasonable manner. *Id.*; *Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013).

The AEDPA undoubtedly mandates a deferential standard of review. The Supreme Court has "emphasized with rather unexpected vigor" the strict limits imposed by Congress on the authority of federal habeas courts to overturn state criminal convictions. *Price v. Thurmer*, 637 F.3d 831, 839 (7th Cir. 2011). It is not enough for the petitioner to prove the state courts were wrong; he must also prove they acted unreasonably. *Harrington v. Richter*, 562 U.S. 86, 101 (2005); *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014) ("An 'unreasonable application of' federal law means 'objectively unreasonable, not merely wrong; even "clear error" will not suffice.'") (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)).

Indeed, the petitioner must demonstrate that the state court decision is "so erroneous that 'there is no possibility fairminded jurists could

disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington*, 562 U.S. at 102). The state court decisions must "be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *Hartjes v. Endicott*, 456 F.3d 786, 792 (7th Cir. 2006). Further, when a state court applies general constitutional standards, it is afforded even more latitude under the AEDPA in reaching decisions based on those standards. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

As the Supreme Court has explained, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102. Indeed, Section 2254(d) stops just short of "imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* This is so because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102–03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)).

A federal court may also grant habeas relief on the alternative ground that the state court's adjudication of a constitutional claim was based upon an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). The underlying state court findings of fact and credibility determinations are, however, presumed correct. *Newman v. Harrington*, 726 F.3d 921, 928 (7th Cir. 2013). The petitioner overcomes that presumption only if he proves by clear and convincing evidence that those findings are wrong. 28 U.S.C. § 2254(e)(1);

Page 8 of 18
Case 2:22-cv-00544-JPS   Filed 12/22/23   Page 8 of 18   Document 19

*Campbell*, 770 F.3d at 546. "A decision 'involves an unreasonable determination of the facts if it rests upon factfinding that ignores the clear and convincing weight of the evidence.'" *Bailey*, 735 F.3d at 949–50 (quoting *Goudy v. Basinger*, 604 F.3d 394, 399–400 (7th Cir. 2010)). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow*, 571 U.S. 12, 17 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). If shown, an unreasonable factual determination by the state court means that this Court must review the claim in question de novo. *Carlson v. Jess*, 526 F.3d 1018, 1024 (7th Cir. 2008). A federal court also reviews a claim de novo where the state courts failed to "reach the merits" of the federal constitutional claim entirely. *Cone v. Bell*, 556 U.S. 449, 472 (2009) ("Because the Tennessee courts did not reach the merits of Cone's *Brady* claim, federal habeas review is not subject to the deferential standard that applies under AEDPA to 'any claim that was adjudicated on the merits in State court proceedings.' 28 U.S.C. § 2254(d). Instead, the claim is reviewed *de novo*.").

4. **LAW & ANALYSIS**

   4.1 **Ground One**

   Petitioner's first ground for relief is that his due process rights were violated because his plea was not knowingly, intelligently, and voluntarily made. He claims that he "would not have taken [the] plea, had he been informed of the correct elements and consequences of the plea." ECF No. 17 at 5. Petitioner makes two arguments for why his plea was not knowingly, intelligently, and voluntarily made, each of which the Court will address in turn.

First, Petitioner claims that it was not established on the record at his plea colloquy that he understood every element of the charges to which he pleaded no contest and that the court should have explicitly "recited the elements [of the] crimes" out loud at the plea colloquy. ECF No. 7 at 3–4, 6 ("This very important part of the colloquy did not take place or in a reasonable fashion for [Petitioner] to understand the nature of the charges."). These contentions are flatly refuted by the plea colloquy transcript, and Petitioner's assertion that the court erred in not verbally reciting the elements of the crimes is mistaken as a matter of law.

A plea "operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). "[T]he Wisconsin standard that a plea must be knowingly, intelligently, and voluntarily entered is the same as the constitutional due process standard." *Warren v. Baenen*, 712 F.3d 1090, 1102 (7th Cir. 2013) (citing Wis. Stat. § 971.08 and *Parke v. Raley*, 506 U.S. 20, 28–29 (1992)).

"[T]o satisfy due process a plea can be voluntary only if the accused 'received real notice of the true nature of the charges against him . . . ,'" including "aware[ness] of the . . . elements of the . . . charge." *Harvey v. McCaughtry*, 11 F.3d 691, 695 (7th Cir. 1993) (quoting *Henderson v. Morgan*, 426 U.S. 637, 645 (1976)) (cleaned up); *Bradshaw*, 545 U.S. at 182–83. Such "real notice," however, does not necessarily require "the court to describe each element of the offense" at the plea colloquy, *Harvey*, 11 F.3d at 695, and "mere defects in the plea colloquy are insufficient to establish a due process violation . . . ." *Meyer v. Frank*, No. 03-C-0238-C, 2003 U.S. Dist. LEXIS 24599, at *7 (W.D. Wis. Sept. 2, 2003) (citing *Brady*, 397 U.S. at 749).

"To determine if [Petitioner's] no contest plea was entered knowingly and voluntarily, [the court] review[s] the decision of the Wisconsin Court of Appeals, the last state court to rule on the merits of [Petitioner's] claim." *Wozny v. Grams*, 539 F.3d 605, 608 (7th Cir. 2008) (citing *Simelton v. Frank*, 446 F.3d 666, 669–70 (7th Cir. 2006)). The Wisconsin Court of Appeals in this case concluded that Petitioner's contention that "his no-contest pleas were not knowing, intelligent, and voluntary" did not pose "an arguably meritorious claim for plea withdrawal," agreeing with Petitioner's appellate counsel, Christopher Sobic ("Sobic"), that "the argument that [Petitioner's] . . . pleas were not entered knowingly, voluntarily, and intelligently lacks arguable merit." ECF No. 13-4 at 4; ECF No. 13-2 at 9.

The Wisconsin Court of Appeals noted that, at the time of his plea colloquy, Petitioner "was thirty-seven years old and had completed the eleventh grade." ECF No. 13-4 at 5. It also noted that the circuit court "established that [he] had reviewed the [plea questionnaire and waiver of rights forms] with his trial counsel and that he understood their contents." *Id.* (citing *State v. Pegeese*, 928 N.W.2d 590, ¶¶ 36–37 (Wis. 2019)). These factors—as well as the fact that the forms Petitioner confirmed having reviewed and signed included jury instructions reciting the elements of the crimes—led the Wisconsin Court of Appeals to conclude that Petitioner "entered his no-contest pleas knowingly, intelligently, and voluntarily." *Id.*

This conclusion neither involved an unreasonable determination of the facts nor ran contrary to clearly established federal precedent as determined by the Supreme Court. Nothing in the record demonstrates any issue with respect to the knowing, intelligent, and voluntary nature of Petitioner's plea, let alone one that would warrant habeas relief.

At his plea colloquy, both Petitioner and Steinle affirmed that Steinle had reviewed the forms (which included attached jury instructions reciting the elements of the offenses) with Petitioner and that Petitioner understood them and signed them accordingly. Petitioner on multiple occasions during the proceeding confirmed that he "under[stood] what [the State] ha[s] to prove." ECF No. 13-10 at 9–10. He also confirmed that he entered into the plea of his own free will and "with full understanding." *Id.* at 10. He assured the court that there was nothing "about what [he] was doing [at the plea colloquy] that [he] d[id]n't understand." *Id.* at 13. Steinle also represented that he had gone over the elements of the offenses with Petitioner and that he was "satisfied" that Petitioner understood them and "how they relate[d] to his conduct." *Id.* at 13–14. Petitioner disputes none of these assertions.

While it is true that the circuit court did not clearly recite the elements of the offenses out loud at the colloquy, the court was not itself obligated to do so in light of the undisputed facts that (1) Petitioner was provided and attested to having reviewed jury instructions reciting such elements before entering his plea, and (2) Steinle affirmed having gone over the elements of the offenses with Petitioner and stated that he was satisfied that Petitioner understood them and how they related to his conduct. ECF No. 13-10 at 6–7, 13–15.

To be sure, if Petitioner had entered his plea "without [ever] having been informed of the crime's elements," the plea would be invalid. *Bradshaw*, 545 U.S. at 183 (citation omitted). But it is abundantly clear that that is not what occurred in this case, and it is apparent that the court's not having *additionally* verbally recited the elements of the offenses did not deprive Petitioner of "real notice" of the nature of the charges. *Harvey*, 11 F.3d at 695 (quoting *Henderson*, 426 U.S. at 645) ("The petitioner seeks to

Page 12 of 18
Case 2:22-cv-00544-JPS    Filed 12/22/23    Page 12 of 18    Document 19

impose a greater requirement by arguing that giving real notice always requires the court to describe each element of the offense."); *Bradshaw*, 545 U.S. at 183 ("[W]e have never held that the judge must himself explain the elements of each charge to the defendant on the record. Rather, the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that . . . the elements of the crime were explained to the defendant by his own, competent counsel.") (citing *Henderson*, 426 U.S. at 647); *United States v. Scholtes*, 447 F. App'x 730, 731 (7th Cir. 2011) ("There is . . . a presumption that [the defendant] was adequately informed because he stated under oath that he had read and discussed the charges with his attorney, and that he understood those charges.") (citing *Bousley v. United States*, 523 U.S. 614, 618 (1998) and *United States v. Webb*, 403 F.3d 373, 379 (6th Cir. 2005)); *Tyler v. Berge*, No. 04-C-525-C, 2004 U.S. Dist. LEXIS 26534, at *14–15 (W.D. Wis. Dec. 17, 2004) (recommending rejection of petitioner's claim that his plea was not entered knowingly, intelligently, and voluntary because circuit court "did not go through each of the elements . . . with [him]" where petitioner confirmed at colloquy that he went over the elements with his attorney, that he understood the elements, and that he reviewed the forms including jury instructions detailing the elements of the charge).[4]

---

[4] Petitioner also takes issue with the circuit court's recitation of the fact that Petitioner was driving on a suspended license during his commission of the offenses. He asserts that the circuit court erroneously represented that fact as an element of "injury by intoxicated use of the motor vehicle" when it is not, in fact, an element of that offense. ECF No. 7 at 4–5. Petitioner's characterization of the circuit court's comments is questionable, and, in any event, he does not demonstrate how this alleged representation prejudiced him or deprived him of due process. The circuit court noted the fact that Petitioner was driving on a suspended license at the time as part of the overall context and background of the offenses, just as it noted that the offenses occurred "at about 4:30 in the morning"

Second, Petitioner alleges that his plea was not knowingly, intelligently, and voluntarily made because the "court failed to give [him] the correct range of punishment" and knowing the "correct punishment" was "crucial for his decision making process." ECF No. 7 at 4, 6. He does not clarify as to how or why the range proffered by the circuit court at the plea colloquy was erroneous. Instead, he appears to refer to the circuit court's comments at sentencing. *See* ECF No. 13-2 at 14 (Sobic's no-merit report) ("[Petitioner] alleged that the court sentenced him based off inaccurate information because at sentencing the court stated he faced 96 years initial confinement when, in reality, he only faced 81 years initial confinement.").

The Wisconsin Court of Appeals rejected this argument as lacking "arguable merit" because, irrespective of this allegedly inaccurate comment during sentencing, "[d]uring the plea hearing, the circuit court correctly told [Petitioner] that it could impose eighteen years and six months of imprisonment for each offense" and further "that it could bifurcate each maximum term of imprisonment as thirteen years and six months of initial confinement and five years of extended supervision." ECF No. 13-4 at 5–6. This conclusion was not unreasonable. Petitioner cannot point to something stated *after* he entered his plea as an alleged contributor to the plea itself. Even assuming arguendo that the circuit did incorrectly state Petitioner's potential sentence at the time of sentencing, that could not have affected his decision—made months prior—to plead no contest. *Cf. United States v. Young*, Nos. 2:08 CR 70 and 2:10 CV 110, 2010 U.S. Dist. LEXIS 36585, at *8

---

and that Petitioner was "on Interstate 43." ECF No. 13-10 at 8. It did not represent those aspects of the circumstances, specifically, as being elements of the offense.

(N.D. Ind. Apr. 12, 2010) ("His attorney's advice and performance with respect to a PSI not even in existence at the time simply cannot have had an impact on his decision to enter the plea agreement and plead guilty pursuant thereto.") (citing *Nunez v. United States*, 495 F.3d 544, 548 (7th Cir. 2007), *vacated on other grounds by Nunez v. United States*, 554. U.S. 911 (2008)). The Wisconsin Court of Appeals reasonably rejected this argument. Accordingly, and in light of the foregoing, Court will deny Ground One.

### 4.2 Ground Two

Petitioner's second ground for relief is that his counsel was ineffective for failing to "object[] to" and raise "in his no-merit report" the issue of Petitioner's no contest plea allegedly not being made knowingly, intelligently, and voluntarily. ECF No. 7 at 3–4.

This ground for relief fails in tandem with Ground One. Because there is no merit to Petitioner's claim that he did not enter his no contest plea knowingly, intelligently, and voluntarily, there is no merit to the claim that either Steinle or Sobic was ineffective for failing to object or proffer on appeal the merits of an argument regarding the validity of Petitioner's plea.

A claim of ineffective assistance of counsel "requires proof of both deficient performance and resulting prejudice." *Morris v. Bartow*, 832 F.3d 705, 710 (7th Cir. 2016) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "When the ineffective-assistance claim is predicated on appellate counsel's filing a no-merit report, the [petitioner] must first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Anderson v. Hepp*, No. 15-C-0355, 2016 U.S. Dist. LEXIS 146144, at *18–19 (E.D. Wis. Oct. 21, 2016) (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000)). "The [petitioner] must also show

Page 15 of 18
Case 2:22-cv-00544-JPS    Filed 12/22/23    Page 15 of 18    Document 19

a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." *Id.* (citing *Smith*, 528 U.S. at 285).

Sobic's no-merit report demonstrates that he fully considered Petitioner's argument regarding his plea and concluded that proffering the merits of that argument on appeal would be frivolous. That conclusion was not unreasonable, as demonstrated by the Court's analysis *supra* Section 4.1. As discussed, there is nothing in the record to support Petitioner's argument that his no contest plea was not knowing, intelligent, and voluntary. Accordingly, Sobic's assertion to the Wisconsin Court of Appeals that "the argument that [Petitioner's] . . . pleas were not entered knowingly, voluntarily, and intelligently lacks arguable merit" was appropriate and did not constitute deficient performance. ECF No. 13-2 at 9.

With respect to Steinle, it is entirely unclear on what grounds Petitioner expects Steinle to have "objected" with respect to Petitioner's no contest plea. ECF No. 7 at 3–4 (asserting merely that Steinle "should have . . . objected"). Petitioner does not dispute that Steinle went over the plea questionnaire and waiver of rights forms with him, discussed the elements of the offenses with him, and went over the concept of a no contest plea and its ramifications with him, as Steinle represented at the plea colloquy. Petitioner also ignores the fact that he confirmed for the circuit court that he was "satisfied with the way that [] Steinle ha[d] been representing" him. ECF No. 13-10 at 13. For all these reasons, the Court will deny Ground Two.

5.  **CONCLUSION**

As discussed above, both Grounds One and Two will be denied. Accordingly, the Court is constrained to deny the amended petition.

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), a petitioner must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). No reasonable jurists could debate whether the amended petition has merit. The Court must, therefore, deny Petitioner a certificate of appealability.

Accordingly,

**IT IS ORDERED** that Petitioner's amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, ECF No. 6, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 22nd day of December, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.